# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ACME WORLDWIDE ENTERPRISES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| THE UNITED STATES, | ) | No. 17-843 C |
| Defendant, | ) | Senior Judge Edward J. Damich |
| and | ) | |
| INDUSTRIAL SMOKE & MIRRORS, INC., | ) | |
| Defendant-Intervenor. | ) | |

## **MOTION FOR RECONSIDERATION OF THE CLAIM CONSTRUCTION ORDER**

Defendants, the United States (the Government) and Defendant-Intervenor, Industrial Smoke & Mirrors, Inc., (together, Defendants) respectfully ask the Court, pursuant to Rule 54(b) of the Rules of the Court of Federal Claims (RCFC), to reconsider its Opinion and Order of December 16, ECF 52, in light of the Federal Circuit's subsequent clarification of the law relating to disclaimers in *Techtronic Indus. Co. v. Int'l Trade Comm'n*, 944 F.3d 901 (Fed. Cir. 2019). The Court's construction of "dynamically altering a frequency of recoils per second when the weapon simulator is in use" and "to alter a frequency of recoils per second when the simulator is in use," is deserving of reconsideration because the Court found that "the applicants did not disclaim subject matter of a fixed rate of fire during the prosecution phase when the device also includes other rates of fire variable when the device is in use," *id*. at 8–9. This finding of no disclaimer conflicts with the history of the patent prosecution. Accordingly we urge the Court to clarify that

the language of the '575 patent necessarily excludes, as a result of the applicants' claim disavowal, (1) weapon simulators that have only fixed rates of fire, like in Wolff, and (2) weapon simulators that have rates of fire that must be fixed during use but that can be tuned when not in use, like in Oishi.

**I.     Applicable Law**

The Court's Opinion and Order construing claims of the '575 patent is an interlocutory order and it is appropriate for any party to seek reconsideration and/or clarification of such an order under RCFC 54(b). *See Wolfchild v. United States*, 68 Fed. Cl. 779, 784 (2005) ("This case remains in an interlocutory posture, and consequently the government's motion for reconsideration falls under RCFC 54(b) and RCFC 59(a), rather than under the more rigorous standards of RCFC 59(e)."). RCFC 54(b) provides, in relevant part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

"The decision whether to grant reconsideration lies largely within the discretion of the [trial] court," and "is available 'as justice requires.'" *L-3 Commc'ns Integrated Sys., L.P. v. United States*, 98 Fed. Cl. 45, 48 (2011) (citation omitted); *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004). While "[a] motion for reconsideration is not intended . . . to give an 'unhappy litigant an additional chance to sway' the court," a motion for reconsideration may advance a just result "under the relevant circumstances." *Id.* The "as justice requires" standard requires considerations of whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred]

since the submission of the issue to the court." *L-3 Commc'ns Integrated Sys.*, 98 Fed. Cl. at 49 (citations omitted).

**II.     Argument**

    A.     <u>Disclaimer As Informed By *Techtronic Indus. Co. v. Int'l Trade Comm'n*</u>

The Court held a claim construction hearing on December 10, 2019, in which all parties participated. *See* ECF 51, Scheduling Order. On December 12, 2019, the U.S. Court of Appeals for the Federal Circuit issued its decision in *Techtronic Indus. Co. v. Int'l Trade Comm'n*, 944 F.3d 901 (Fed. Cir. 2019). The Government was preparing to file a notice of supplemental authority with the Court when it issued its Opinion and Order on December 17, 2019. ECF 52.

The *Techtronic* opinion is pertinent to the claim construction issues presented to this Court. In *Techtronic*, the Federal Circuit noted that where a specification "describes the present invention as having a feature, that representation may disavow contrary embodiments." 944 F.3d at 907 (internal quotations and citations omitted). There, the patented invention "disavow[ed] coverage of wall consoles lacking a passive infrared detector because the specification, in each of its sections, disclose[d] as the invention a garage door opener improved by moving the passive infrared detector from the head unit to the wall console." *Id*.

The Federal Circuit held that "where the inventor has . . . manifested that the invention does or does not include a particular aspect, that intention is regarded as dispositive." *Id.* at 907 (quotation omitted). Where such a manifestation has occurred, "the inventor has 'disavowed' claim scope." *Id*. While a disavowal must be clear, "it need not be explicit," and "may be inferred from clear limiting descriptions of the invention in the specification or prosecution history." *Id*. (quotations and citations omitted). Specifically, "[a]n inventor may also disavow claim scope by distinguishing the claimed invention over the prior art." *Id*. (quotations and citations omitted). In *Techtronic*, the Circuit held that "by consistently representing the invention as the placement of

3

the detector in the wall console, has thus effected a disavowal of alternative locations." *Id*. at 908. Further, where the intrinsic record "plainly represents the scope of the invention to the exclusion of some embodiments, it is unnecessary that it also concede that those embodiments are 'infeasible' or even 'impossible' by reference to its teachings," for a court to find disavowal by the applicants. *Id*. at 909. The Circuit further noted that just as "claims must be construed in light of both the specification and the prosecution history," so too claim disavowal requires assessment of both, as "contradictory statements" between them may make a finding of disavowal "unlikely." *Id*.

In this case, both claim 1 and claim 14 of the '575 patent explicitly claim as the invention a weapon simulator (or method of simulating weapon recoil with a weapon simulator) wherein "the host computer is capable of dynamically altering a frequency of recoils per second when the weapon simulator is in use." 7:42–45; 8:20–23. Claim 25 similarly claims a "processor [capable of] alter[ing] a frequency of recoils per second when the weapon simulator is in use." 8:56–58. But during the patent prosecution, the Examiner rejected the application as anticipated under § 102(b) by Wolff as teaching the entirety of claims 1–2, 14–15, and 25 as they then stood, ECF 47-2 at 127.[1] Applicants admitted in response to that rejection that "[t]he pneumatic recoil unit of Wolff is not tuneable but fixed at 10 Hz for firing." ECF 47-2 at 146. Applicants amended the claims to include (1) a <u>tuneable</u> recoil unit and (2) an <u>electric</u> motor <u>to power the gun active tuneable recoil unit</u>. ECF 47-2 at 143–45. The Examiner rejected the amended claims under § 103 over Wolff in combination with Oishi, which the Examiner expressly found disclosed both new

---

[1] Throughout this motion, Defendants will refer to ECF 47-2, the copy of the '575 prosecution history submitted as part of its claim construction briefing as Exhibit B, by the page numbers stamped at the top of each page by the Court's CM/ECF system.

concepts. ECF 47-2 at 152. (noting "the established advantages associated with the Oishi system, namely, tuneable recoil and also the elimination of pneumatics.").

Applicants amended further, rewriting the claims to include (3) a gun active <u>dynamically</u> tuneable recoil unit. ECF 47-2 at 192–95; *see* ECF 47-2 at 197 (noting in their remarks that "[t]here is no teaching or suggestion in Oishi that the change occurs dynamically through that the change effects frequency of recoils per second"). The Examiner found that while Wolff did not disclose a recoil rate that is "dynamically tuneable by a host computer," such a system was an established concept. ECF 47-2 at 205. Following an interview, the Examiner withdrew the rejection and allowed the claims, ECF 47-2 at 251–59, making an examiner's amendment that replaced the term "active dynamically tuneable" with "active," ECF 47-2 at 254–56. In the Notice of Allowance, the Examiner noted that the prior art did not teach a system "wherein the frequency of the recoils can be altered by a host computer while the system is in use (*e.g.*, an instructor initiating an error . . .").[2] ECF 47-2 at 256.

Here, applicants expressly admitted that "the pneumatic recoil unit of Wolff is not tuneable but fixed at 10 Hz for firing." ECF 47-2 at 146. Applicants further expressly admitted that Oishi "teaches an impact weight member that is linearly accelerated in a reciprocating manner . . . [whose] kinetic energy [] is transferred to the housing of the gun thereby simulating recoil." ECF 47-2 at 196. And applicants expressly admitted that the level of Oishi's kinetic energy is modified by changing the mass of the impact weight member when the unit is not in use via mechanical means. *Id*. at 196–97. Accordingly, applicants expressly admitted during prosecution that a

---

[2] The applicants stated in their "summary" of the interview with the examiner that: "[T]he Examiner suggested that the language in claims 1 and 25 'when the weapon simulator is in use' was redundant and could be deleted." ECF 47-2 at 245. But this suggestion is not mentioned in the examiner's official interview summary, ECF 47-2 at 258, and the "in use" language was not removed in the examiner's amendments to the claims, ECF 47-2 at 254–56.

5

system that has a fixed rate of fire or is tuneable to different fixed rates of fire, but not during use ("dynamically"), is prior art to the '575 patent and that the claims of the '575 patent necessarily disclaim such subject matter. Notably, Plaintiff has re-urged this same disclaimer during its claim construction briefing. *See* ECF 50 at 5 ("Defendants overlook that the actual claim language, 'dynamically,' inherently excludes a system capable of only a fixed recoil rate while in use."). And this disclaimer suffuses throughout all of the claims at issue. *Id*. at 4 ("Apparatus claims 1 and 25, and method claim 14 recite substantially similar language . . . . ACME therefore respectfully submits that the construction of the language in each of the three claims is the same.").

The Government does not seek to revisit its proposed construction in this Motion for Reconsideration and does not propose any new constructions. Instead, the Government simply urges the Court to clarify its construction to give full effect to the clear disavowal of claim scope undertaken by the applicants during examination through a revised construction, the appropriate scope of such disavowal informed by the Federal Circuit's recent opinion in *Techtronics*.

The ambit of the Court's construction as it currently stands is that the claimed invention covers systems that have fixed rates of fire <u>as well as those that</u> can be tuned to various fixed rates of fire. *See* ECF 52 at 9 ("[T]he device also includes other rates of fire variable when the device is in use."). The Court's construction effectively permits Plaintiff to recapture impermissibly the previously disavowed claim scope, a result disfavored by controlling precedent. *Comput. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008) (noting a plaintiff "cannot recapture claim scope disavowed during prosecution to prove infringement").

Further, the Court's express finding that "a simulator capable of only a fixed rate of recoil would be unpatentable in view of Wolff," ECF 52 at 7, lends additional support to the Government's identified recapture of disclaimed claim scope. If the claim language covers a

6

simulator with only a fixed rate of recoil, as the Court's order appears to indicate, then the '575 patent should be held as unpatenable in view of Wolff, and the Government will so move for summary judgment on this issue. *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1573 (Fed. Cir. 1986) ("[T]hat which infringes if later anticipates if earlier") (quoting *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889)).

Accordingly, the Court should clarify that the language of the '575 patent necessarily excludes, as a result of the applicants' claim disavowal, (1) weapon simulators that have only fixed rates of fire, like in Wolff, and (2) weapon simulators that have rates of fire that must be fixed during use but that can be tuned when not in use, like in Oishi. Clarifying these exclusions should permit the Court to otherwise retain its "plain and ordinary meaning" construction.

### B. Misapprehension Resulting in Conflation of Recoil Rates and Malfunctions

Additionally, the Government respectfully submits that the Court has misapprehended the difference between alteration of the recoil rates of a weapon and the provision of simulated malfunctions. The Court stated that the '575 patent relates to a weapon simulator that "allows an instructor to alter the recoil rates of a weapon, while in use, to simulate different malfunctions." ECF 52 at 2. The Court's statement seemingly conflates two separate and distinct aspects of the claimed invention, namely, (1) dynamic varying the recoil rates of a weapon simulator while in use and, separately, (2) simulation of malfunctions. This conflation is significant because "altering the recoil rates" of the weapon simulator relates primarily to the ability to use the simulator to simulate different weapons with different rates of fire, not simulated malfunctions. While one malfunction—"weapon sluggishness" ('575 patent, 6:36–38)—implicates both simulation of a malfunction and dynamic variation of recoil rates, as a slower-than-normal recoil rate is the manifestation of the malfunction. However, no other malfunction implicates the recoil rate. *See*

7

'575 patent, 6:33–44 ("Runaway—the host computer sends recoil signals to gun active recoil unit . . . [regar]dless of trigger position; Weapon misfire—the host computer does not send gun active recoil unit recoil signals even when trigger is depressed; . . . Round Cook-off—the host computer sends a recoil signal to gun active recoil unit without trigger signal input.").

In each malfunction, the simulator does or does not engage in recoil simulation, but the recoil rate is not necessarily implicated. This is contrasted with the "weapon sluggishness" malfunction that explicitly "slows the rate at which the recoil signal is being sent to gun active unit." *Id*. at 6:39–41. Claim differentiation also supports this requisite distinction between altered recoil frequency and weapon malfunction. *Compare id*. at independent Claim 14 ("wherein the host computer is capable of dynamically altering a frequency of recoils per second when the weapon simulator is in use") *with* dependent Claim 17 (wherein Claim 17 "further [comprises] the host computer initiating one or more malfunctions"). As the Federal Circuit "has frequently stated, the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (citing *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001)). And where, as here, "the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest." *Liebel-Flarsheim*, 358 F.3d at 910 (Fed. Cir. 2004) (collecting cases). Accordingly, the proper construction must not permit the simulated "malfunctions" of dependent Claim 17 to be construed so as to be coextensive with the "dynamically altering a frequency of recoils per second" of independent Claim 14.

Importantly, extensive intrinsic evidence supports the Government's submission that the altered recoil frequency relates to simulating different weapons and associated rates of fire, not

8

malfunctions. *See id.* at 3:5–12 ("[T]his embodiment replicates near actual recoil forces . . . recoil motion, frequency, and intensity . . . [and] is adaptable to any small arms weapon or trainer . . . ."); *id.* at 6:16–25 ("the recoil rate preferably matches the firing rate").

The Court's claim construction, expressly linking the alteration of recoil frequencies to malfunctions, *see* ECF 52 at 8, cements this misapprehension into the construction of the claim language. It is not "altering" a frequency to go from fixed recoil to no recoil, yet the Court's Order specifically makes that connection, doing so in a misfire malfunction context. *Id.*

It is respectfully submitted that the Court should further clarify its Order to correct the conflation between alteration of the recoil rates of a weapon and the provision of simulated malfunctions, making clear that a weapon simulator that moves between a fixed rate of recoil (firing) state and a no recoil (non-firing) state, like Wolff, does not "alter" its recoil rate.

## III. Conclusion

The Government requests that the Court clarify its claim construction order, expressly excluding (1) weapon simulators that have only fixed rates of fire and (2) weapon simulators that have rates of fire that are fixed during use but that can be tuned when not in use. These exclusions are required to give full effect to applicants' express claim disavowal, the reach of which is informed by the Federal Circuit's recent opinion in *Techtronics*.

Additionally, the Court should clarify its claim construction order to avoid conflating alteration of the recoil rates of a weapon with the provision of simulated malfunctions. This correction is required to give effect to the clear language of the claimed invention, the canon of claim differentiation, and avoid confusion as to claim scope resulting from the current construction.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

GARY L. HAUSKEN
Director

|  |  |
|---|---|
|  |   /s/ Conrad J. DeWitte, Jr. |
| Of Counsel: | CONRAD J. DeWITTE, JR. |
| PATRICK C. HOLVEY | Assistant Director |
| Department of Justice | Commercial Litigation Branch |
|  | Civil Division |
|  | Department of Justice |
|  | Washington, D.C. 20530 |
|  | conrad.dewitte@usdoj.gov |
|  | (202) 307-0459 |
|  |  |
|  | COUNSEL FOR THE DEFENDANT, |
| January 17, 2020 | THE UNITED STATES |
|  |   /s/ Thomas L. Kautz |
|  | <u>Filed with permission received by electronic mail</u> |
|  | Thomas L. Kautz |
|  | GrayRobinson, P.A. |
|  | 401 East Las Olas Boulevard, Suite 1000 |
|  | Fort Lauderdale, Florida 33301 |
|  | tom.kautz@gray-robinson.com |
|  | (954) 761-8111 |
|  |  |
|  | COUNSEL FOR DEFENDANT-INTERVENOR, |
| January 17, 2020 | INDUSTRIAL SMOKE & MIRRORS, INC. |